UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA LEE STAINTHORP,<br><br>Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL, Commissioner of Social Security,<br><br>Respondent. | No. 1:17-cv-00934-GSA<br><br>**ORDER AFFIRMING DEFENDANT'S DENIAL OF DISABILITY BENEFITS TO PLAINTIFF** |

## I. Introduction

Plaintiff Donna Lee Stainthorp ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act and supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 15 and 16.

Plaintiff contends that by failing to question the vocational expert explicitly about inconsistencies between the expert's testimony and the provisions of the Dictionary of Occupational Titles ("DOT"), the ALJ erred in concluding that Plaintiff could perform alternative

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

work. Defendant maintains that the ALJ's questioning of the vocational expert was sufficient. The Court analyzes applicable law and concludes that any error was harmless.

## II.    **Procedural Background**

On February 19, 2010, Plaintiff filed an application for disability insurance income. AR 13. On February 22, 2010, Plaintiff filed an application for supplemental security income. AR 13. In both cases, she alleged disability beginning February 5, 2010. AR 13.

The Commissioner denied the application initially on September 8, 2010, and upon reconsideration on March 11, 2011. AR 13. On May 2, 2011, Plaintiff filed a timely request for a hearing before an administrative law judge. AR 13.

Administrative Law Judge Sharon Madsen presided over an administrative hearing on May 8, 2012. AR 28-59. Plaintiff, represented by counsel, appeared and testified. AR 28. An impartial vocational expert, Judith Najarian, (the "VE") also appeared and testified. AR 28.

On June 22, 2012, the ALJ denied Plaintiff's application. AR 13-22. The Appeals Council denied review on September 20, 2013. AR 1-6. On November 18, 2013, Plaintiff filed a timely complaint seeking this Court's review. *Stainthorp v.Comm'r of Soc. Sec.* (1:13-cv-01874-GSA), Doc. 1. On February 19, 2015, this Court reversed the Commissioner's decision and remanded for further proceedings. *Stainthorp v.Comm'r of Soc. Sec.* (1:13-cv-01874-GSA), Docs. 18 and 19. The Appeals Council remanded the case to the ALJ. AR 787.

Meanwhile, Plaintiff filed subsequent claims for Title II and Title XVI on October 10, 2013. AR 787. The ALJ consolidated the two claims. AR 787. On November 10, 2015, the ALJ convened a second administrative hearing. AR 813-38. Plaintiff, represented by counsel, appeared and testified. AR 813. An impartial vocational expert, Stephen Schmidt (the "VE"), also appeared and testified. AR 813.

On January 21, 2016, the ALJ again denied Plaintiff's application. AR 787-802. The Appeals Council denied review on February 1, 2017. AR 774-77. On July 13, 2017, Plaintiff filed a complaint seeking this Court's review. *Stainthorp v.Comm'r of Soc. Sec.* (1:17-cv-00934-GSA), Doc. 1.

2

### III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### IV. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment of impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

>     specific job vacancy exists for him, or whether he would be hired if
>     he applied for work.
>
>     42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927; 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. §§ 416.920(a)-(f).

## V.    Summary of the ALJ's Decision and the Issues Presented

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 787-802. The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 5, 2010 (the alleged onset date). AR 789. Plaintiff's severe impairments included cervical degenerative disc disease, lumbar degenerative disc disease, chronic pain syndrome, migraine headaches, depression, post-traumatic stress disorder and a personality disorder. AR 789. The severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d); 416.925; and 416.926). AR 790-91. The ALJ found that Plaintiff retained the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk 6 to 8 hours in an eight-hour work day; occasionally stoop, crouch, crawl, climb, kneel, balance, and reach overhead but never climb ladders, ropes, or

scaffolds. AR 791. Plaintiff could perform simple routine tasks with occasional public contact and occasional contact with coworkers and supervisors in the same building but not working side-by-side. C.F.R. § 404.1567(b) and 416.967(b). AR 791. Plaintiff was unable to perform any past relevant work. AR 801.

At step five, the ALJ relied on the testimony of a vocational expert to find that Plaintiff was capable of performing jobs that existed in significant numbers within the national economy. AR 801. Accordingly, the ALJ found that Plaintiff was not disabled. AR 802.

## VI. The ALJ's Reliance on Vocational Expert Testimony Generally Complied with Applicable Law

Plaintiff challenges the agency's decision contending that Plaintiff's residual functional capacity precludes her performance of the alternative jobs identified by the ALJ at step five. Doc.15 at 3-16. The Commissioner disagrees, contending that the ALJ properly relied on the opinion of the vocational expert. Doc. 16 at 4-11. The difference in the parties' positions requires the Court to evaluate whether the ALJ's questioning of the vocational expert concerning inconsistencies with the Dictionary of Occupational Titles (the "DOT") complied with applicable law.

### A. Background: the ALJ's Questioning of the Vocational Expert

After establishing that Plaintiff was incapable of performing any of her prior work, the ALJ directed the vocational expert to assume a hypothetical person of the same age, education, work background as Plaintiff, who could lift and carry twenty pounds occasionally, ten pounds frequently; sit, stand or walk six to eight hours in an eight-hour work day; occasionally climb ladders, ropes or scaffolds, crawl and reach overhead; and frequently stoop, crouch, climb and balance. The hypothetical person was also limited to simple, routine tasks, occasional public contact, and occasional contact with coworkers and supervisors, "being defines as you can work in the same building, not side-by-side with them." AR 833-34. The vocational expert opined that the hypothetical person could perform the following jobs: (1) cleaner, No. 323.687-014, light, SVP 2, with 390,000 jobs available in the U.S.; (2) laundry worker, No. 361.587-010, light, SVP

5

2, with 40,000 jobs available in the U.S.; and (3) office helper, No. 239.5467-010, light, SVP 2, 255,000 jobs available in the U.S. AR 834. Although the ALJ further questioned the expert regarding the degree of contact with coworkers and supervisors in the exemplary occupations, she did not question whether any of the positions identified in the second hypothetical required more than occasional overhead reaching. AR 834.

Following the presentation of additional hypothetical questions by both the ALJ and Plaintiff's attorney, the ALJ asked the vocational expert whether his testimony was consistent with the DOT. AR 836. After the expert responded that his testimony was consistent, the following colloquy ensued:

> ALJ: And this is where we got in trouble with the last one. The occasional public, the occasional coworkers, supervisors, is that based on your experience or is that, that wouldn't be part of the DOT, would it?
>
> VE: Well, not totally, but the DOT does talk about the extent of talking, but it doesn't break it down any further than that.
>
> ALJ: Okay. All right. So the rest of it would be your experience?
>
> VE: Yes, Your Honor.
>
> AR 836.

The ALJ did not question the vocational expert concerning the extent of overhead reaching in the exemplary positions or any other issue relating to the jobs identified in the course of the expert's response to the hypothetical questions.

**B.** **Legal Standard**

In determining whether appropriate jobs exist for the claimant, the ALJ generally will refer to the DOT, which sets forth "detailed physical requirements for a variety of jobs." *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). An ALJ must take judicial notice of reliable job information available from various governmental and other publications, including the DOT. 20 C.F.R. § 416.966(d); SSR 00-4p at *2. The DOT is the primary source of "information about the requirements of work in the national economy." SSR 00-4p at *2. In addition, the agency may use the services of a vocational expert or other specialist to assist in

6

determining a complex issue, such as whether a claimant's job skills can be used in a specific occupation. 20 C.F.R. § 416.966(e); SSR 00-4p at *2.

Social Security Ruling 00-4p is intended, among other things, to clarify standards for the use of vocational experts in administrative hearings. SSR 00-4p at *1. The ruling emphasizes that before relying on a vocational expert's testimony to support a disability determination or decision, an ALJ must: "Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . . . and [e]xplain in the determination or decision how any conflict that has been identified has been resolved." *Id.*

By identifying the DOT as the primary source of information, the ruling contemplates that the ALJ will be familiar (or will familiarize herself) with the provisions of the DOT applicable to the claim being considered. SSR 00-4p at *2. Vocational experts are intended to assist in resolving complex questions, generally by testifying at administrative hearings. *Id.*

Vocational expert testimony should generally be consistent with DOT provisions. *Id.* The ALJ may rely on vocational expert testimony that contradicts the DOT but only insofar as the record contains persuasive evidence to support the deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p at *2. As a result, the ruling requires the ALJ to first determine whether a conflict exists, and if it does, to determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* at *2-3.

The ruling imposes "an affirmative responsibility" to ask about any conflict between the vocational expert's testimony and information provided in the DOT. SSR 00-4p at *4. The ALJ must:

> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and

///

///

7

> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p at *4.

An ALJ can only properly rely on testimony inconsistent with the DOT after he or she has determined both whether the VE has deviated from the DOT and whether any deviation is reasonable. *Massachi*, 486 F.3d at 1152-54. Reasonable deviations may include occupations for which the DOT does not provide information but for which information is available elsewhere and occupations for which the general information in the OT does not apply in the specific situation. *Id.* at 1153 n. 17. Evidence sufficient to support a deviation from the DOT may consist either of specific findings of fact regarding a plaintiff's ability to perform particular jobs or of inferences drawn from the context of the expert's testimony. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 n. 7 (9th Cir. 1995) (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's residual functional capacity); *Terry v. Sullivan*, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where vocational expert's understanding of applicable legal standards is clear from context).

Because the ALJ conducting the administrative hearing in *Massachi* did not ask the vocational expert whether her testimony conflicted with the DOT, the expert never acknowledged a conflict and the ALJ never determined whether there was a reasonable explanation for the conflict. 486 F.3d at 1153-54. In this case, the ALJ asked generally whether the VE's testimony was consistent and because of the prior remand, asked specifically whether the testimony concerning public contact was consistent. The ALJ did not ask specifically about the apparent inconsistency between the DOT's specifications concerning reaching in the exemplary jobs.

This circuit does not expect an ALJ to conduct an independent review of a DOT listing in order to determine whether he or she must question a vocational expert in detail about a potential conflict. "[N]ot all potential conflicts between an expert's job suitability recommendation and the *Dictionary's* listing of 'maximum requirements' for an occupation will be apparent or obvious . . .

. . an ALJ need only follow up on those that are." *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016). The decision explained:

> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.

*Gutierrez*, 844 F.3d at 808.

For example, although Mrs. Gutierrez had weight bearing and overhead reaching limitations of her right arm but full use of her left arm, the vocational expert opined that she could work as a cashier. *Id.* The DOT provides generally that cashiering involves frequent reaching. *Id.* "While 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' SSR 85-15 . . . at *7 . . ., not every job that involves reaching requires the ability to reach overhead." *Id.* Although the DOT specifies that both cashier and stock clerk jobs require frequent reaching, the court contrasted the work performed by stock clerks, who frequently reached overhead to stock shelves, with the reaching performed by a cashier, who almost never has to reach overhead. *Id.* Observing that the work of cashiers is commonly known, the court concluded that an ALJ has no obligation to ask specific questions where common experience indicates that the frequency or necessity of a task is unlikely and unforeseeable. *Id.* In such instances, an ALJ is entitled to rely on the expert's experience in job placement to account for the requirements of a particular job. *Id.* at 809.

The Ninth Circuit considered the *Gutierrez* holding in *Lamear v. Barryhill*, 865 F.3d 1201 (9th Cir. 2017). Mr. Lamear had back and neck problems that imposed no restrictions on his right hand and arm but limited him to being able only occasionally to handle, finger, or reach overhead with his left, non-dominant arm. *Id.* at 1203. The vocational expert opined that an individual with that limitation could not use a keyboard with his left hand but could still work as an office

9

helper, mail clerk, or parking lot cashier. *Id.* All three exemplary jobs require frequent handling, fingering, and reaching. *Id.* The expert did not testify concerning how Lamear could perform the exemplary jobs given his left arm and hand limitations, and the ALJ did not ask the expert to reconcile any potential inconsistency between Lamear's manipulative limitations and the exemplary jobs. *Id.* at 1204.

The court distinguished Mr. Lamear's case from that of Mrs. Gutierrez, finding that common experience was not sufficient to conclude that an individual with limitations in handling, fingering and feeling could perform the job duties described in the DOT descriptions. *Id.* at 1205. In reaching its conclusion, the court noted that all three positions require *frequent* handling, fingering, and reaching, indicating that such activities could be performed for as much as two-thirds of the workday. *Id.* at 1206. In addition, the DOT descriptions included such general task for these jobs as "opening and sorting mail, stuffing envelopes, distributing paperwork, and counting change." *Id.* at 1205.

The Ninth Circuit has also applied *Gutierrez* in a series of unpublished cases which illustrate the fact-dependent nature of an ALJ's duty to inquire. *See Vargas v. Berryhill*, 735 Fed.Appx. 413 (9th Cir. 2018) (ALJ erred in failing to reconcile job as packager with claimants need to avoid moderate exposure to fumes, odors, dust, gas and poor ventilation); *Ruiz v. Berryhill*, 732 Fed.Appx. 592 (9th Cir. 2018) (no need to investigate and resolve conflict where claimant's limited English language abilities were not essential, integral of expected for the job of sewing machine operator); *Butt v. Berryhill*, 727 Fed.Appx. 913 (9th Cir. 2018) (no error where expert testified that claimant with limitation on overhead reaching using one arm could nonetheless perform prior work as preschool teacher); *Randazzo v. Berryhill*, 725 Fed.Appx. 446 (9th Cir. 2017) (ALJ erred in relying on expert testimony that a claimant with the residual functional capacity to perform low stress jobs requiring only occasional changes in the work setting or occasional decision making, could perform light work as a small parts assembler without inquiring whether the job of small parts assembler was fast paced or rapid assembly line work); *Towne v. Berryhill*, 717 Fed.Appx. 705 (9th Cir. 2017) (in the absence of obvious or

10

apparent conflict, ALJ was entitled to rely of expert's specific testimony that claimant with the ability to perform a limited range of light work could perform the exemplary jobs); *Buckins v. Berryhill*, 706 Fed.Appx. 380 (9th Cir. 2017) (ALJ erred in not investigating expert's opinion that claimant with reaching restriction could perform jobs of housekeeping cleaner and ticket taker); *Rashidi v. Berryhill*, 703 Fed.Appx. 569 (9th Cir. 2017) (ALJ erred in failing to investigate apparent discrepancy concerning ability of claimant limited to occasional fine and gross manipulation to work as sorter, stuffer, and polisher).

### C. Application to the Jobs Identified in This Case

As noted above, Plaintiff's residual functional capacity specified, among other things, that she could only occasionally reach overhead. AR 791. Based on the vocational expert testimony, the ALJ found that Plaintiff could perform the following exemplary jobs: (1) cleaner, No. 323.687-014, light, SVP 2, with 390,000 jobs available in the U.S.; (2) laundry worker, No. 361.587-010, light, SVP 2, with 40,000 jobs available in the U.S.; and (3) office helper, No. 239.5467-010, light, SVP 2, 255,000 jobs available in the U.S. AR 834. Plaintiff contends that the DOT inclusion of frequent reaching in the descriptions of each of these jobs is inconsistent with the expert's opinion that Plaintiff could perform them.

According to the DOT, all three of these jobs require frequent reaching (1/3 to 2/3 of the time). Doc. 15-1 at 3, 8, 11. As in *Gutierrez*, because "reaching" includes reaching in all directions, including overhead, factual analysis of each job is necessary to determine the extent to which more than occasional overhead reaching is required.

#### 1. Cleaner, Housekeeping

Although the only overhead activity specifically identified in the general description of cleaner, housekeeping (No. 323.687-014), is "hangs drapes" (Doc. 15-1), the necessity of reaching overhead when cleaning a room is likely and foreseeable involving such activities as placing linens and other items in overhead storage, and overhead dusting and cleaning of raised furniture, fixtures, mirrors and windows. *Rahn v. Berryhill*, 2018 WL 1054299 at *3-4 (C.D. Cal. Fed. 23, 2018) (No. 2:17-cv-02491-JDE); *Diaz v. Berryhill*, 2018 WL 1187530 at *3-4 (C.D.Cal.

Mar. 7, 2018) (No. 2:17-cv-04216-JDE). Both courts concluded that an expert's testifying that a claimant limited to occasional overhead reaching is capable of working as a housekeeping cleaner is inconsistent with the DOT and required the ALJ to inquire further. *Rahn,* 2018 WL 1054299 at *4; *Diaz,* 2018 WL 1187530 at *4. This court agrees that the expert's testimony is inconsistent with the DOT description of cleaner, housekeeping. The ALJ erred in failing to further investigate the discrepancy by more specifically questioning the expert.

### 2. Office Helper

Among district courts in the Ninth Circuit, the consensus is that the DOT description of "office helper" is not inconsistent with an expert finding the job appropriate for a claimant capable of limited overhead reaching. "The DOT job description of an office helper permits the inference that some overhead work may be required, such as retrieving clerical supplies from overhead storage, but nothing in that job description suggests more than occasional overhead work is required." *Hopkins v. Berryhill*, 2017 WL 923902 at * 5 (C.D.Cal. Mar. 6, 2017) (No. EDCV 15-02413 AJW). "[I]t is not obvious or apparent that an office helper, whose primary duties include taking and distributing messages, files and paperwork, would need to reach overhead frequently." *Ibach v. Colvin*, 2017 WL 651940 at *4 (C.D. Cal. Feb 15, 2017) (No. EDCV 15-2647-AJW). The court acknowledged, however, that some individual office helper positions could include "an element of overhead reaching, such as retrieving items from higher shelves." *Id.* Considering a claimant who could reach overhead with only one arm, an Arizona district court observed that "it was not necessarily obvious that a conflict existed" between the expert's testimony and the DOT description of office helper regardless of whether a claimant could reach overhead with one arm or neither arm. *Smith v. Comm'r of Soc. Sec. Admin.*, 2018 WL 3134882 at *4 (D. Az. June 27, 2018) (No. CV-11-01623-PHX-GMS) (appeal pending).

One district court disagreed, finding that the general description of "office helper" includes multiple tasks which likely and reasonably could require overhead reaching, "specifically sorting, distributing, filing, and marking items." *Burdette v. Berryhill*, 2017 WL 6453264 at *5 (C.D. Cal. Dec. 14, 2017) (No. CV 16-05240-JDE). The *Burdette* court concluded

12

that the ALJ erred in not asking the vocational expert to clarify the conflict between her opinion and the provisions of the DOT. 2017 WL 6453264 at *5.

This court agrees with the consensus opinion that because the necessity of reaching overhead when working as an office helper is not likely and foreseeable, the ALJ was not required to question the vocational expert further about consistency between her opinion and the DOT job description.

### 3. **Laundry Worker**

The general description in the DOT provides that a laundry worker washes and irons apparel, linens, and similar items using equipment usually found in a household or small laundry. Doc. 15-1 at 9. Nothing in the description suggests that the job typically requires overhead reaching. The court has found a single case addressing the question of whether the DOT description was inconsistent with an expert's finding the job appropriate for a claimant with an overhead reaching restriction. That case addressed office helpers and laundry workers simultaneously:

> [S]imilar to cashiers discussed in *Gutierrez*, it is uncommon for office helpers [and] laundry workers . . . to have to engage in overhead reaching. Office helpers perform a wide range of tasks such as sorting and distributing mail, collecting and distributing paperwork, and filing (DOT 239.567-010); laundry workers generally load and unload washing machines, iron, and fold (DOT 302.685-010) . . . . . While some office helpers [and] laundry workers . . . may have to reach overhead in certain circumstances, the frequency or necessity of overhead reaching is unlikely and unforeseeable. Accordingly, the ALJ did not have to ask the VE follow up questions and correctly relied on the VE's testimony, which constituted substantial evidence.
>
> *Alba v. Berryhill*, 2017 WL 1290484 at *4 (C.D. Cal. April 4, 2017) (No. ED CV 15-2524-SP).

This court agrees that because the necessity of a laundry worker's reaching overhead in the course of her job is not likely and foreseeable, there was no obvious inconsistency that required the ALJ to question the expert further.

### D. **Harmless Error**

An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability

determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Although the ALJ erred in failing to question the vocational expert concerning the inconsistency between her opinion and the DOT definition of cleaner, housekeeping, the error was harmless. Plaintiff's ability to perform the duties of laundry worker (40,000 jobs available in the U.S.) and (255,000 jobs available in the U.S.) (AR 834) is sufficient to establish that Plaintiff can perform "work which exists in significant numbers either in the region in which [she] lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(b).

    **v.**     **Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Donna Lee Stainthorp.

IT IS SO ORDERED.

| Dated: | **October 26, 2018** | **/s/ Gary S. Austin** |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |